***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives or amend the Opinion and Award except with minor modifications.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties in a pre-trial agreement and at the hearing before the deputy commissioner as:
 STIPULATIONS
1. At the time of the injury giving rise to this claim, May 20, 2003, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
2. Liberty Mutual Insurance Company was the carrier on the risk for Defendant on the date of injury.
3. Plaintiff was involved in a motor vehicle accident on May 20, 2003 while traveling to work. Plaintiff filed a workers' compensation claim, and defendants denied the compensability of the claim via Form 61 dated August 22, 2003.
4. At the time of the accident, plaintiff earned an average weekly wage of $265.72, thus yielding a compensation rate of $177.16.
5. At the hearing of this claim before the deputy commissioner, the parties stipulated into evidence the following exhibits:
a. Stipulated Exhibit 1: Industrial Commission forms.
b. Stipulated Exhibit 2: Medical records.
c. Stipulated Exhibit 3: Plaintiff's personnel file.
 d. Stipulated Exhibit 4: Plaintiff's recorded statement.
 ***********
Based upon all of the evidence produced at the hearing, the Full Commission makes the following:
 FINDINGS OF FACT
1. On May 20, 2003, plaintiff had been employed by defendants as an in-home aide for approximately six months. She earned $6.72 per hour in addition to 31¢ for each mile she traveled between jobsites. Plaintiff's average weekly wage was $265.72, thus yielding a compensation rate of $177.16.
2. On May 20, 2003, plaintiff was traveling in her personally owned vehicle to the home of her first patient for the day. She was going around a curve. She looked down and when she looked back up, she had crossed the center line and was in the wrong lane. Another car was approaching, and both drivers jerked their steering wheels in the same direction. As a result, there was a head-on collision and plaintiff sustained severe injuries to both legs. Plaintiff admitted fault in causing the accident, and she received two citations.
3. Immediately after the accident, plaintiff was rushed to UNC Hospitals via ambulance. After a thorough examination, she was diagnosed with a right Type II open tibia fracture and a left supracondylar/intracondular femur fracture. The same day, plaintiff was admitted to the hospital and she underwent the following surgical procedures: incision and debridement with primary closure of the right type II open tibia fracture; intramuscular nail, right tibia fracture; and closed reduction and internal fixation of left supracondular/intracondylar femur fracture with a 9-hole list plate. The procedures were performed by Dr. Edmund Campion. He followed plaintiff's progress after she was discharged from the hospital on May 28, 2003 with instructions to bear weight on her right leg as tolerated but to avoid any weight on her left leg.
4. After her discharge from the hospital, a brace was applied on June 2nd and plaintiff was sent to physical therapy. When plaintiff returned for a follow-up visit with Dr. Campion on July 7, 2003, she indicated that she had been weightbearing on her legs as tolerated although she remained in a significant amount of pain. Physical therapy had been going well, and plaintiff was pleased with her progress.
5. On August 2, 2003, plaintiff visited the emergency room at Betsy Johnson Regional Hospital. She complained of increased bilateral leg pain and back pain. She complained that her pain medication was not working and that she needed more. She was diagnosed with osteomyalgia and given a prescription for Motrin to take in addition to the Percocet, Lexapro, Klonopin, and other medication that had been prescribed by Dr. Campion. Plaintiff returned to the hospital one week later on August 9, 2003 at which time she reported that she had rolled off of her bed and fallen onto her right side. She was experiencing lower back pain which radiated into her mid back region. She also had pain in her right upper arm and elbow. The doctor recommended x-rays, but plaintiff abruptly left the hospital against medical advice. Plaintiff returned to the hospital yet again on August 20, 2003, this time reporting that the Percocet she was taking was having no effect on her pain, and that she was experiencing severe pain. Plaintiff stated that her care had been turned over to Dr. Tara Lewis, a family doctor who had referred her to a pain clinic. The emergency room doctor gave plaintiff prescriptions for Nubain and Phenergan and told her to follow-up with Dr. Lewis as soon as possible. Plaintiff was admitted to the Pain Clinic at Wake Medical Center on August 22, 2003 with complaints of bilateral lower extremity and chronic lower back pain. She was discharged a few days later on August 26, 2003.
6. Plaintiff's left distal femur fracture failed to heal properly, and she thus underwent another surgery on November 19, 2003. Specifically, the following procedure was performed by Dr. John Hubbard: bone grafting with demineralized bone and autologous bone marrow to the left femur nonunion. Plaintiff has continued to receive ongoing treatment for her leg fractures. Before and since plaintiff's accident, she has treated at Benson Area Medical Center for depression and chronic low back, both of which pre-existed the accident.
7. As part of defendant-employer's company policy, employees are not considered to be working or "on the clock" while traveling from their homes to their first patient's home in the morning and from the last patient's home in the afternoon back to their homes. Also, employees are only paid for travel between patients' homes and not from home to the first patient's home or from the last patient's home back home again. Plaintiff understood and agreed to this policy at the time she was hired by defendant-employer in November of 2002.
8. In her job as an in-home aide, plaintiff worked from 8:00 a.m. in the morning until 4:00 p.m. in the afternoon, Monday through Friday.
9. Plaintiff saw the same patients each week, although she did not see each patient each day. For example, plaintiff might see Patient A on Monday, Wednesday, and Friday, and she might see Patient B on Tuesday and Thursday. Plaintiff would see these same patients until the patient died, got sick, or no longer needed her services.
10. Defendant-employer does not provide transportation for its employees. Employees are paid travel reimbursement for travel between
patients' homes, and plaintiff admitted that she was not reimbursed for travel to the first patient's home in the morning and from the last patient's home to her home in the afternoon.
11. Plaintiff has suffered from depression for most of her life. Plaintiff began treating at Benson Area Medical Center (BAMC) on October 20, 2000, at which time she reported a history of anxiety and depression. She had previously been prescribed Prozac, Paxil, and Klonopin. During almost every visit plaintiff had at BAMC between October 2000 and the date of the accident, she received treatment for her depression and anxiety.
12. Plaintiff was the primary financial support for her whole family as her husband suffered from several medical conditions. Plaintiff worried about being able to take care of her family, buying her husband's medication, and transporting him to his doctor's appointments. These are the same concerns that plague plaintiff currently.
13. Plaintiff will likely suffer from depression for the remainder of her life, and the condition will likely be exacerbated throughout her life by the events of her family life.
14. Plaintiff resigned from her employment with defendant-employer on June 16, 2003 due to the severity of her injuries and the extended period of time she would require to recover.
 ***********
Based upon the foregoing Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The North Carolina Court of Appeals held in Hunt v. Tender LovingCare, 153 N.C. App. 266, 569 S.E.2d 675 (2002), that "an employee is entitled to workers' compensation benefits for injuries sustained in an accident arising out of and in the course of employment. "Arising out of" refers to the cause of the accident; the employee must be about the business of the employer. "In the course of" points to the time, place, and circumstances under which an accident occurred. The accident must happen during the time and place of employment."
2. The "going and coming rule" states that accidents which occur while an employee travels to and from work do not generally arise out of or in the course of employment. Id. An employee is not engaged in the business of the employer when she is driving her own personal vehicle to her place of employment and when leaving the place of employment to return home.Id.
3. There are several exceptions to the going and coming rule, one of which is called the "traveling salesman exception." Pursuant to this exception, an accident that occurs while traveling to and from the place of employment is compensable if travel is contemplated as part of the work. Yates v. Hajoca Corporation, 1 N.C. App. 553, 162 S.E.2d 119
(1968). Because plaintiff had fixed work hours and saw the same patients each week, her situation is different from a true traveling salesman who might visit a different customer each day. Plaintiff saw the same patients week after week, traveled to the same homes week after week, and therefore she had fixed work locations. Therefore, the traveling salesman exception does not apply to this case.
4. Another exception to the going and coming rule is called the "contractual duty exception." According to this exception, where an employer provides transportation or allowances to cover the cost of transportation, an accident that occurs when an employee is traveling to or returning from work is compensable. Puett v. Bahnson Co., 231 N.C. 711,58 S.E.2d 633 (1950). Plaintiff was only paid travel reimbursement for travel between patients' homes and defendant-employer did not transport any employees to and from work. Therefore, the contractual duty exception does not apply in this case.
5. As no exception to the coming and going rule applies in this case, plaintiff's accident did not arise out of and in the course and scope of her employment with defendant-employer. Hunt v. Tender Loving Care,153 N.C. App. 266, 569 S.E.2d 675 (2002).
6. Plaintiff's depression pre-existed the accident and would have continued long after the accident and eventual physical recovery even had the accident of May 20, 2003 never occurred. Further, plaintiff has returned to her pre-accident condition and defendants would in those circumstances bear no responsibility for ongoing care. N.C. Gen. Stat. §97-53(13); Booker v. Duke Medical Center, 297 N.C. 458 (1979). Wilkins v.J.P. Stevens Co., 333 N.C. 449 (1993).
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the undersigned makes the following:
 AWARD
1. Plaintiff's claim for indemnity compensation under the North Carolina Workers' Compensation Act is hereby DENIED.
2. Plaintiff's claim for medical compensation under the North Carolina Workers' Compensation Act is hereby DENIED.
3. The parties shall pay their own costs.
This the 29th day of July 2005.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG COMMISSIONER
DISSENTING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER